UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

N. DENIS HAWKESWORTH & )
CYNTHIA S. VAIL, )
 )
       Plaintiffs, )
 ) Docket no. 2:10-cv-232-GZS
v. )
 )
NATIONWIDE MUTUAL INSURANCE )
COMPANY, et al., )
 )
 )
       Defendants. )

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Motion for Summary Judgment by Defendant Maryland Casualty Company ("Maryland Casualty") (Docket # 10) as well as a related Motion to Exclude the Expert Affidavit of David Haskell (Docket # 18). As explained herein, the Court DENIES Defendant's Motion to Exclude the Expert Affidavit and GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment.

**I.    LEGAL STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, -- F.3d --, No. 09-2614, 2011 WL 1447743, at *2 (1st Cir. Apr. 15, 2011) (quoting Rivera-Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation.") (citations omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

## II. FACTUAL BACKGROUND

Construing the record in accordance with the just-described standard, the Court finds the following undisputed facts:

### A. The Hawkesworth House

Plaintiffs N. Denis Hawkesworth and Cynthia S. Vail entered into a purchase and sale agreement with RTG, Inc. ("RTG") and B & M Construction, Inc. ("B & M") on September 25, 2001. Under this agreement, RTG would eventually sell to Plaintiffs land in Falmouth with a house upon the land constructed by B & M. The Town of Falmouth issued the certificate of occupancy for this house (the "Hawkesworth house") on May 7, 2002. In July of 2002, Plaintiffs moved into their new home.

The first winter after moving into the Hawkesworth house Plaintiffs experienced problems with the furnace/power venter. Plaintiffs also experienced one leak in the flat roof above their entranceway that caused a small stain on the interior ceiling. This leak was repaired under their home warranty by Darryll Norton, a subcontractor for B & M who had worked on the initial roofing of the house. Plaintiffs did not experience other significant problems in the first year but started noticing additional problems in late 2003 and early winter 2004. These problems included a leak in the basement and a burst pipe in the garage.[1] The winter also brought significant ice damming and ice buildup on the roof. During this period, Plaintiffs continued to notice a small water stain on the ceiling in the foyer area of their house.

---

[1] In the personal notes produced by Mr. Hawkesworth at his July 15, 2009 deposition, Hawkesworth indicated these problems began in November 2003. (See Hawkesworth Notes (Docket # 11-4) at PageID 878)

Jumping forward several years, in mid-2008, the roof over the foyer was eventually repaired by Josh Marr. In doing this repair, Marr notified Hawkesworth as to the lack of flashing on this area of the roof. Even after this repair work by Marr, the stain on the ceiling continued to grow much larger in the latter half of 2008. In response to the growing stain and significant leaking, Plaintiffs called a new contractor, Dave Haskell. In December 2008, Plaintiffs learned from Haskell that there was mold in the Hawkesworth house. Although Plaintiffs were aware of water leaks and other problems before then, Hawkesworth did not consider these problems to be "major" problems until the mold was discovered. (Hawkesworth Dep. at 173.) Since discovering the mold, Hawkesworth and Vail have moved out of the house.

In or around May 2009, Hawkesworth began seeking treatment for symptoms such as dizziness, fatigue, sore throat, memory problems and headaches. Hawkesworth recalls experiencing these symptoms in mid-2008 but did not seek treatment until Spring 2009. David Spence, P.A., Hawkesworth's primary care provider, connected these symptoms to mold exposure. By early 2009, Cynthia Vail was diagnosed with acid reflux. When she was deposed in July 2009, she was preparing to undergo additional medical tests to determine whether mold inhalation played a role in her acid reflex. Absent evidence of mold causing her acid reflux, Vail and her doctors believed that her acid reflux was caused by stress.[2]

### B. The Underlying State Case

On March 13, 2009, less than seven years after moving into their newly-constructed house, Hawkesworth and Vail brought suit in the Maine Superior Court against RTG and B & M, along with other named defendants, alleging that defects in the construction of their house resulted in subsequent water penetration into the home, which, in turn, caused damage to the

---
[2] Notably, Vail has worked as a physician assistant since 1994.

4

home including, but not limited to, rot and dry rot to sheathing, siding and structural members of the house as well as water and mold damage affecting sheetrock, insulation and electrical fixtures.

The state case, captioned <u>Hawkesworth v. B & M Construction Co., Inc., et al.</u>, Cumberland County Sup. Ct. Docket # CV-09-149 (the "State Case"), was settled resulting in a consent judgment against RTG and B & M for $750,000. This stipulated judgment was entered on March 11, 2010. In exchange for RTG and B & M's consent to judgment in that amount, Plaintiffs agreed to limit their recovery to available insurance proceeds and not seek to enforce the judgment against RTG and B & M directly. In this reach and apply case, the issue to be resolved is which, if any, insurer can be required to pay towards this state judgment.

### C. B & M's Maryland Casualty Insurance Coverage

As relevant to this case, Defendant Maryland Casualty Company served as an insurer for RTG and B & M between 2001 and 2003. On May 7, 2001, Maryland Casualty issued a Residential General Contractor Commercial Liability Insurance Policy ("the 2001 Policy") to RTG and B & M. The 2001 Policy covered the time period of May 7, 2001 through May 7, 2002. On May 7, 2002, Maryland Casualty issued a Residential General Contractor Commercial Liability Insurance Policy ("the 2002 Policy") to B & M. The 2002 Policy covered the time period of May 7, 2002 through May 7, 2003. After May 7, 2003, B & M was covered by another insurer.

Both the 2001 Policy and the 2002 Policy state in relevant part: "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the coverage territory; and (2) The 'bodily injury'

5

or 'property damage' occurs during the policy period." (Ex. A (Docket # 11-2) at 27 & Ex. B (Docket # 11-3) at 23.) Likewise, both the 2001 Policy and the 2002 Policy include a fungus exclusion as follows: "This insurance does not apply to 'bodily injury', 'property damage', or 'personal and advertising injury' caused directly or indirectly, in whole or in part, by: (1) Any 'fungus(es)' or 'spore(s)' ... For the purposes of this endorsement, the following definitions are added: 'Fungus(es)' includes, but is not limited to, any form or type of mold, mushroom, or mildew.'" (Ex. A (Docket # 11-2) at 27 & Ex. B (Docket # 11-3) at 60.)

### D. Plaintiff's Designated Expert: David Haskell

David Haskell is a general contractor and carpenter residing in Standish, Maine. He operates a construction business known as Haskell Construction. In the Fall of 2008, Haskell was hired by Hawkesworth to repair a water leak in the front foyer of the Hawkesworth house. As already discussed, this foyer area had been the subject of prior repairs by Darryll Norton and Josh Marr. In the course of attempting to affect a repair to this leak, Haskell discovered numerous defects and deficiencies in the construction of the Hawkesworth house. The defects and deficiencies discovered include: (1) windows without proper flashing and caulking, (2) no flashing installed where rooflines met other rooflines and where rooflines met sidewalls, (3) no silicone or flashing at butt joints in the siding and in the window trim, (4) the chimney chase was improperly installed, (5) the chimney chase was not correctly flashed, (6) the radius roofs in the front and over the dormer windows were not flashed, and (7) improperly installed siding on the house. (Haskell Aff. ¶ 5.) As indicated in his affidavit, Haskell believes that these defects and deficiencies "caused water penetration" into the Hawkesworth house that began "almost

immediately upon completion of construction" and remained "continuous and progressive since the time of construction." (Haskell Aff. ¶ 10.)

## III.  DISCUSSION

### A. Motion to Exclude the Expert Affidavit of David Haskell (Docket # 18)

Before turning to the summary judgment motion, the Court first addresses Defendant's Motion to Exclude the Expert Affidavit of David Haskell (Docket # 18). To the extent this Motion challenges Haskell under Federal Rule of Evidence 702, the Court believes such a challenge is without merit. As a carpenter and home builder, Haskell has the skill and training to testify regarding what construction methods are required to prevent water penetration. Additionally, to the extent that expert testimony is necessary for a fact finder to conclude that water will penetrate a structure that is improperly flashed or caulked, the Court is satisfied that Haskell is qualified to offer that opinion.[3]

Maryland Casualty additionally objects to Haskell's expert opinion by claiming that his affidavit exceeds his expert designation. Although the designation is less detailed than the affidavit, it does clearly disclose that Haskell would testify that "windows on the Hawkesworth house were improperly installed which resulted in water penetration into the home." (Pls. Designation of Expert Witnesses (Docket # 18-2) at 2.) In the Court's assessment, this disclosure was sufficient to provide notice to Defendant that Haskell's opinion would trace the problem to the 2002-2003 timeframe. For these reasons, the Court DENIES Defendant's Motion to Exclude the Expert Affidavit of David Haskell. As a result of this ruling, the Court has considered the affidavit as part of the summary judgment record.

---

[3] This conclusion relates only to the summary judgment record. Defendants are certainly free to renew any and all objections to Mr. Haskell's testimony at trial.

**B. Motion for Summary Judgment (Docket # 10)**

Maine's reach and apply statute, 24-A M.R.S.A § 2904, "provides a cause of action to a person who recovers a final judgment against the judgment debtor to reach and apply insurance coverage to satisfy the judgment if (1) the judgment debtor was insured against such liability when the right of action accrued; and (2) the insurer was given notice of such accident, injury, or damage before the recovery of the judgment." Sarah G. v. Maine Bonding & Cas. Co., 866 A.2d 835, 837 (Me. 2005) (citing Marston v. Merchs. Mut. Ins. Co., 319 A.2d 111, 113 (Me. 1974)). As to this first prong,[4] the burden is on the plaintiff in a reach and apply action to establish coverage. It is then the insurer's burden to establish that the claim is subject to a policy exclusion. See, e.g., Patrons Oxford Ins. Co. v. Harris, 905 A.2d 819, 827 & n. 6 (Me. 2006) (citing Mut. Fire Ins. Co. v. Hancock, 634 A.2d 1312, 1312-13 (Me. 1993)); see also Middlesex Mutual Assur. Co. v. Fish, 738 F. Supp. 2d 124, 132 (D. Me. 2010).

Thus, under the Maryland Casualty policy at issue in this case, Plaintiffs bear the burden of establishing that the bodily injury or property damage occurred during the policy period. See Kraul v. Maine Bonding & Cas. Co., 559 A.2d 338, 338 (Me. 1989). In short, Defendant Maryland Casualty is entitled to summary judgment if there is no triable issue as to the existence of damage during the policy period, that is, prior to May 7, 2003. Alternatively, Defendant argues that all of Plaintiff's claims are subject to the Fungus Exclusion found in the Maryland Casualty policies. Thus, as to Plaintiffs' claimed bodily injuries and property damage, the Court must consider the timing of these events as well as the role that fungus and mold played in any injury or damage.

---

[4] In this case, there is apparently no dispute regarding the second prong.

1. **Bodily Injury**

Turning first to Plaintiffs' claimed bodily injuries, there is no evidence that any of Plaintiffs' claimed bodily injuries occurred prior to May 7, 2003. By their own accounts, Plaintiffs did not believe that they had any significant problems with their new home until late 2003, at the earliest. Thus, to the extent Plaintiffs have argued that they had bodily injuries caused by stress or emotional distress (rather than mold), there is no evidence that any stress-induced injuries occurred prior to May 7, 2003. Rather, at best, it appears that from the time they moved into the Hawkesworth house through May 7, 2003, Plaintiffs may have experienced the stress that any individual experiences in connection with daily life and moving into a newly constructed home. In short, on the record presented, Plaintiffs cannot create a triable issue or meet their burden of showing that any of their bodily injuries occurred during the Maryland Casualty coverage period.

As even Plaintiffs appear to admit, to the extent they cannot tie their injuries to stress, there is some evidence that each may have injuries that are related to mold. While there is no evidence to support the existence of mold-induced injuries prior to May 7, 2003, if such evidence did exist, mold-related bodily injuries would fall squarely within the Fungus Exclusion.[5]

In short, there is no genuine triable issue of fact as to the Maryland Casualty coverage for Plaintiffs' alleged bodily injuries and, as to bodily injuries, Defendant is entitled to summary judgment.

---

[5] Indeed, in responding to the pending Motion, Plaintiffs have acknowledged that "damages for bodily injury proximately caused by fungus are subject to exclusion." (Pls. Response (Docket # 14) at 16.)

2.   **Property Damage**

The alleged property damage presents a more challenging question. The record before the Court contains evidence that the infamous foyer leak was first repaired during the coverage period. The need for this 2002 repair work is in line with Haskell's expert testimony that the construction defects would have resulted in water penetration "almost immediately." (Haskell Aff. ¶10.) In short, the Court is satisfied that Plaintiffs have met their burden of creating a triable issue of fact as to property damage during the coverage period.[6]

Even assuming property damage occurred prior to May 7, 2003, Defendant argues that any property damage during the coverage period is subject to the fungus exclusion. On this issue, Defendant bears the burden of proof. See Am. Guar. & Liab. Ins. Co. v. Timothy S. Keiter, P.A., 360 F.3d 13, 17 (1st Cir. 2004) ("Under Maine law, insurers bear the burden of proving the applicability of policy exclusions, and any ambiguity as to the meaning of the policy language is construed against the insurer.")

In the Court's view, there are genuine issues of material fact that prevent the Court from granting summary judgment on this issue. Namely, Plaintiffs' original complaint asserted that their property damage was the result not only of mold but also water penetration as well as rot and dry rot. Defendant has not shown that property damage caused by water penetration and/or rot are subject to the fungus exclusion. In fact, the summary judgment record, contains no information that would allow a fact finder to determine what, if any, causal relationship there

---

[6] In reaching this conclusion, the Court states no opinion as to whether Plaintiffs will ultimately meet their burden of proof at trial.

was between the water penetration and rot, mold and other water damage found in the Hawkesworth house.[7]

Having found that there is no genuine issue of fact regarding Maryland Casualty coverage for Plaintiffs' bodily injuries, the remaining trialworthy issue is Plaintiffs' claim that there is coverage for their claimed property damage, which was also part of the settlement entered in Hawkesworth v. B & M Construction Co., Inc., et al., Cumberland County Sup. Ct. Docket # CV-09-149 (the "State Case"). If the preponderance of evidence at trial establishes that at least some of the underlying property damage is subject to coverage, Maryland Casualty has very limited defenses. See, e.g., Colony Ins. Co. v. Danly, Inc., 755 F. Supp. 2d 219, 223 (D. Me 2010) (quoting Patrons, 905 A.2d at 828). Under Maine law, once coverage is found to exist for at least a portion of an unallocated damage award, Defendant is left to defend by showing that the settlement reflects fraud, collusion or is otherwise unfair and unreasonable. See Patrons, 905 A.2d at 828-29 ("If the insurer prevails on the coverage issue, it is not liable on the settlement. If the insurer does not prevail as to coverage, it may be bound by the settlement, provided the settlement, including the amount of damages, is shown to be fair and reasonable, and free from fraud and collusion."). Here, the stipulated judgment entered in the State Case ultimately does not allocate the $750,000 in damages awarded to Plaintiffs. Thus, at trial, Maryland Casualty's partial summary judgment as to bodily injuries may prove to be a Pyrrhic victory.

---

[7] Plaintiffs urge the Court to apply the efficient proximate cause doctrine in considering the relationship between water damage and mold damage citing a number of state cases from other states. (See Pls. Response (Docket # 14) at 15.) As was noted in First Specialty Ins. Corp. v. Maine Coast Marine Const., Inc., 532 F. Supp. 2d 188 (D. Me. 2008), the Maine Law Court has "not yet recognized" the efficient proximate cause rule. Id. at 196. In affirming First Specialty, the First Circuit similarly acknowledged the lack of clarity as to the application of the efficient proximate cause doctrine under Maine law. See First Specialty Ins. Corp. v. Am. Home Assur. Co., 558 F.3d 97, 105 (1st Cir. 2009). The First Circuit went on to explain that the "doctrine is only applicable where the causes are independent." Id. In the absence of any factual record that would allow the Court to conclude that water and mold were independent causes of Plaintiffs' property damage, the Court declines to speculate as to whether the efficient proximate cause rule could be applied in deciding this case under Maine law.

## IV. CONCLUSION

For the reasons just explained, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment (Docket # 10). Plaintiffs may proceed to trial on the portion of Count II that seeks to reach and apply insurance coverage for property damage. To the extent Count II sought to reach and apply coverage for bodily injury, Defendant is entitled to summary judgment in its favor.

As previously explained, the Court hereby DENIES Defendant's Motion to Exclude the Expert Affidavit of David Haskell (Docket # 18).

SO ORDERED.

/s/ George Z. Singal<br>United States District Judge

Dated this 21st day of June, 2011.